UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————

JAMES HOFMANN, individually and on )
behalf of others similarly situated, )
                              )
                  Plaintiff, )     Civil Action No. 1:20-cv-4027
                              )
        -against-            )     **CLASS ACTION COMPLAINT**
                              )     **(JURY TRIAL DEMANDED)**
LONG ISLAND UNIVERSITY, )
                              )
               Defendant. )

————————————————————

        Plaintiff James Hofmann ("Plaintiff"), by and through undersigned counsel, brings this action against Long Island University ("Defendant" or "University") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

        1.     Plaintiff brings this case as a result of Defendant's decision not to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

        2.     This decision deprived Plaintiff and the other members of the Classes (as described below) from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

        3.     Defendant has either refused to provide reimbursement for the tuition, fees and other costs that Defendant failed to provide during the Spring 2020 semester, or has provided

inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their losses.

4.      This action seeks refunds of the amount Plaintiff and other members of the Classes are owed on a *pro-rata* basis, together with other damages as pled herein.

## PARTIES

5.      Long Island University is an institution of higher learning located in Brooklyn, New York.

6.      Upon information and belief, Defendant has an estimated endowment of approximately $230 million and more than 8,100 enrolled students during the 2019-2020 academic year.

7.      Moreover, upon information and belief, Defendant was allocated more than $7 million of federal stimulus under the CARES Act. The CARES Act directs that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

8.      Plaintiff is an individual and a resident and citizen of the State of West Virginia, and was a student enrolled at the University during the Spring 2020 term.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

10.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New York and has sufficient minimum contacts with New York.

11.     Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant is an institution domiciled and doing business in this District.

## BACKGROUND FACTS

12.     Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant's institution.

13.     As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

14.     There are hundreds, if not thousands, of institutions of higher learning in this country.

15.     Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which does not provide for physical attendance by the students.

16.     Defendant's institution offers in-person, hands-on programs, "blended" programs, and fully online distance-learning programs, all of which it markets and prices as separate and distinct products.

17.     Plaintiff and members of the proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and specifically chose to enroll in the on-campus product.

18.     Defendant has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs.

19.     Accordingly, when students pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include, but are not limited to:

- Face-to-face interaction with professors, mentors and peers;
- Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;
- Student governance and student unions;
- Extra-curricular activities, groups, intramurals, etc.;
- Student art, cultures, and other activities;
- Exposure to community members of diverse backgrounds, cultures, and schools of thought;
- Social development and independence;
- Hands-on learning and experimentation; and
- Networking and mentorship opportunities.

20.     Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 semester.

21.     When this happened, Plaintiff was forced from campus and deprived of the benefit of the bargain for which he had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

22.     In addition to tuition, Defendant charges a mandatory University Fee.

23.     Plaintiff was required to and did pay the mandatory University Fee associated with his Spring 2020 enrollment at the Brooklyn campus.

24.     In addition to the broad-based mandatory University Fee, Defendant charges a myriad of other program or course specific fees, such as the Course Fee paid by Plaintiff.

25.     As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiff and members of the Fees Class (defined below) no longer had the benefit of the services for which these fees were paid.

26.     At Defendant's request and direction, Plaintiff and members of the Classes lost access to many campus facilities and services thereon throughout the remainder of the Spring 2020 term.

27.     For example, Plaintiff returned to his home on March 8, 2020 for spring break and was never allowed to go back, even to gather his belongings from his dormitory.

## FACTUAL ALLEGATIONS

28.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 21, 2020.[1]

29.     Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about May 12, 2020 and commencement ceremonies on May 20, 2020.[2]

30.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 120 days.

31.     However, as a result of the COVID-19 pandemic, Defendant announced on March 11, 2020 that it would begin delivering classes via electronic channels on March 16, 2020.[3]

---

[1] Academic Calendar & Exam Schedules, https://www.liu.edu/Brooklyn/About/Offices/Registrar/Calendar/.
[2] Id.
[3] Coronavirus Update, https://liu.edu/coronavirus.

32.     On March 12, 2020, Defendant announced that all online instruction would extend until the end of the spring semester.[4]

33.     Almost immediately students began demanding refunds for the fees and charges demanded in this action.

34.     Upon information and belief, petitions have since been circulated, and have received more than 700 signatures.[5]

35.     Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students on March 12, 2020 deprived Plaintiff and other members of the Classes from access to campus facilities and in-person instruction for approximately 55% of the semester for which they had contracted.

36.     Although Defendant continued to offer some level of academic instruction via online classes, Plaintiff and the other members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

37.     These realities notwithstanding, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the tuition that has already been paid.

38.     Likewise, Plaintiff and members of the proposed Fees Class were deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services and other opportunities.

39.     Defendant has announced it will be issuing credit for room and board fees. Accordingly, this action does not seek to certify an On-Campus Housing Class or Meals Class for the recovery of those funds. However, Plaintiff reserves the right to amend these allegations should Defendant fail or refuse to issue these credits as promised.

---

[4] Coronavirus Update, https://liu.edu/coronavirus.
[5] https://www.change.org/p/long-island-university-partial-tuition-refund.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

41. Excluded from the Classes is Long Island University, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

42. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Rule 23 of the Federal Rules of Civil Procedure.

### Numerosity: Fed. R. Civ. P. 23(a)(1)

44. The members of the Classes are so numerous and geographically dispersed that individual joinder of all members of the Classes is impracticable. Plaintiff is informed and believes

that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

45.    This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

(a)  Whether Defendant engaged in the conduct alleged herein;

(b)  Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

(c)  Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(d)  Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the other members of the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(e)  Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were contracted to cover;

(f)  Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

(g)  Whether Defendant committed conversion as detailed above against Plaintiff and the other members of the Tuition Class;

(h)  Whether Defendant committed conversion as detailed above against Plaintiff and the other members of the Fees Class;

(i)  Whether Defendant violated New York General Business Law § 349, *et seq.* as to Plaintiff and the other members of the Tuition Class;

(j)  Whether Defendant violated New York General Business Law § 349, *et seq.* as to Plaintiff and the other members of the Fees Class;

(k)  Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(l)  Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(m) The amount and nature of relief to be awarded to Plaintiff and the other Class members.

## **Typicality: Fed. R. Civ. P. 23(a)(3)**

46.    Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

47.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of other members of the Classes he seeks to represent. Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

48.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

49.     Even if members of the Classes could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

50.     To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

51.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to members of the Classes as a whole.

## FOR A FIRST COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

**(Plaintiff and Other Members of the Tuition Class)**

52.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

53.     Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

54.     Plaintiff and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including, but not limited to, access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

55.     The rights and privileges of students at the University are set forth by Defendant through its website academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications.

56.     These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

57.     One such right is the ability to be physically present on campus, and fully enjoy the facilities, services and opportunities provided thereon.

58.     As can be seen from University's Registrar page, when accepted students accept Defendant's offer to enroll in a class, they specifically select the course offered by Defendant, which includes the campus and the classroom the offered course will be taken.[6]



59.     Defendant does not deny that the physical locations of its campus are a main benefit of enrollment that attracts many students to the University. See ¶ 73.

60.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at its University as opposed to other institutions of higher learning.

---

[6] https://www.liu.edu/Brooklyn/Enrollment-Services/Registration/.

61.     Through these publications, Defendant markets to and enrolls students in three separate and distinct products.

62.     Defendant specifically markets certain classes and degree programs as being offered on a fully-online basis.[7]

63.     Defendant specifically markets certain classes and degree programs as being offered on a "blended" learning format.[8]

64.     In a "blended" learning format, Defendant specifically markets programs that incorporate both on-campus and remote learning. (e.g., M.S. In Adult Nurse Practitioner (Blended Format): "***Approximately 45% of the class sessions are delivered online with the remaining class sessions delivered face-to-face***.").[9]

65.     Indeed, Defendant dedicates an entire section of its website to these online and "blended" programs, which can be accessed at https://www.liu.edu/online.

66.     Conversely, Defendant's publications with respect to non-online classes and non-"blended" classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, campus location, and the like.

67.     When visitors enter the admissions home page on Defendant's website for its Brooklyn Campus (https://www.liu.edu/brooklyn), they are greeted with a series of photos with captions titled: "WE ARE LIU."

---

[7] LIU Online, https://www.liu.edu/online.
[8] Id.
[9] https://www.liu.edu/~/link.aspx?_id=2C6F5B90CBC04BA2B49714120D5215B8&_z=z.

13

68.     The first of these captioned photos shows the Brooklyn campus accompanied with a message from Defendant: "LIU Brooklyn offers opportunity for every student, *all on the safest campus in New York City*."[10]

69.     The second of these captioned photos shows the Kumble Theater of the Performing Arts accompanied with a message from Defendant: "Kumble Theater of the Performing Arts is a *state-of-the-art* performance venue that serves one of the most diverse communities in the nation. Explore Brooklyn's rich history, catch a Broadway show in Manhattan, or watch professional sports and amazing concerts just a few blocks away at the Barclays Center."[11]

70.     At the bottom of the page that shows the New York City skyline, Defendant states "Brooklyn is New York's College Town: LIU Brooklyn is located just steps away from the Barclays Center; top arts venues like BAM; and the hip restaurants, boutiques, and cafes of Fort Green. And it's only a short subway ride to the vast cultural offerings and professional opportunities of Manhattan."[12]

71.     Prospective students are then led to the "About" page, which is also accompanied by the New York City skyline.[13]

72.     On this page Defendant proclaims to prospective students: "No matter what your area of interest – business, the arts, pharmacy, education, liberal arts and sciences or healthy sciences, you will have a unique advantage *studying at the Brooklyn campus*."[14]

73.     Defendant further represents to prospective students, "Wall Street, the financial capital of the world, is just a short subway ride away. World-renowned museums, galleries, and

---

[10] https://www.liu.edu/brooklyn.
[11] Id.
[12] https://www.liu.edu/brooklyn.
[13] About LIU Brooklyn, https://www.liu.edu/brooklyn/About-LIU-Brooklyn.
[14] Id.

theaters are located in the surrounding neighborhood and throughout the New York metropolitan area."[15]

74.     Defendant then states: "The campus also has affiliations with some of the top hospitals, health care facilities and pharmaceutical companies in the world."[16]

75.     Defendant further addresses prospective students: "The Brooklyn campus has been providing outstanding educational opportunities to students from all walks of life for more than eight decades. It is the original unit of Long Island University, one of the largest and most comprehensive private universities in the country. Known for its excellent academics, renowned faculty, comprehensive career services, *state-of-the-art facilities*, Division I athletics and small class size, the campus educates more than 11,000 credit seeking and continuing education students"[17]

76.     Defendant also offers to prospective students: "At LIU Brooklyn, all students find an academic community where cultural, ethnic, religious, racial, sexual, and individual differences are respected and where commonalities are affirmed. *This requires the Campus to be open and welcoming,* even as it maintains respect for intellectual, cultural and academic traditions."[18]

77.     Defendant further explains what prospective students should expect from their on-campus education: "Recent decades have brought significant upgrades to the campus' physical plant, including new structures such as the William Zeckendorf Health Sciences Center; the Jeanette and Edmund T. Pratt Jr. Center for Academic Studies; the Steinberg Wellness Center, featuring *state-of-the-art* fitness center, yoga studios, swimming pool, and expansive outdoor

---

[15] About LIU Brooklyn, https://www.liu.edu/brooklyn/About-LIU-Brooklyn.
[16] Id.
[17] Id.
[18] Campus History, https://www.liu.edu/brooklyn/About-LIU-Brooklyn/Mission.

athletics fields; and new simulation rooms and training center in the Harriet Rothkopf Heilbrunn School of Nursing.[19]

78.    Further, Defendant states: "Today, LIU Brooklyn is thriving. Located in the heart of Downtown Brooklyn's thriving Cultural District, the campus is a self-contained urban oasis just steps from world-class arts and entertainment venues like BAM and the Barclays Center and minutes from Manhattan."[20]

79.    On the "Visit Campus" page, Defendant states: "Brooklyn is hot, and the campus is right in the heart of it all-located just steps away from Barclays Center; top arts venues; and the hip restaurants, cafes and boutiques of Fort Green."[21]

80.    Further on this page, prospective students find: "LIU Brooklyn was ranked the third-safest campus in the nation and the safest in New York City by the Daily Beast website. Our beautifully landscaped, self-contained 11-acre campus offers easy access to the resources, professional opportunities, entertainment and historic attractions of the world's greatest city.[22]

81.    Defendant goes on to state:

> The city's hippest neighborhoods—Fort Greene, Williamsburg, Boerum Hill, Brooklyn Heights and Clinton Hill—are right in our backyard. Nearby, you'll find Coney Island; the Brooklyn Promenade, with its incredible panoramic views of the city; The Brooklyn Botanic Gardens; Prospect Park and the world-famous Brooklyn Bridge. And the excitement of Manhattan is just a short subway ride away. Wall Street, Broadway, Little Italy, Greenwich Village, Soho, Tribeca, the South Street Seaport, Times Square and some of the world's top museums and galleries are all waiting for you to explore.[23]

82.    Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior

---

[19] Campus History, https://www.liu.edu/brooklyn/About-LIU-Brooklyn/Mission.
[20] Id.
[21] Visit Campus, https://www.liu.edu/brooklyn/About-LIU-Brooklyn/Visit-Campus.
[22] Id.
[23] Id.

to February 3, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[24]

83.     In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model. This is evident from the fact that the University had to postpone education until March 23, 2020 while its professors hurriedly and ineffectively scrambled to make the switch.[25]

84.     Those prospective students who are interested in enrolling at the University after consuming the marketing materials described above are invited to complete applications, and some are selected for and offered admission.

85.     When a student is offered admission to the University, the student receives a number of further communications and has a number of additional interactions with Defendant.

86.     Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus, which is further evidenced by the parties' prior course of conduct.

87.     Those classes for which students expected to receive in-person instruction began the Spring 2020 semester by providing in-person instruction from Defendant.

88.     Each day for the weeks and months leading up to March 11, 2020, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

---

[24] Academic Calendar & Exam Schedules, Spring 2020,
https://www.liu.edu/Brooklyn/About/Offices/Registrar/Calendar/.
[25] Coronavirus Update, https://liu.edu/coronavirus.

89.     Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

90.     Each day for the weeks and months prior to announced closures, students had access to the full campus.

91.     Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

92.     Based on this mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

93.     However, the University breached the contract with Plaintiff and the other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

94.     This cause of action does not seek to allege "academic malpractice."

95.     Rather, it is clear from the facts and circumstances that Defendant offered three separate and distinct products, one being live, in-person, on-campus education, with its ancillary and related services, one being "blended,"  and the other being online distance education.

96.     Plaintiff and the other members of the Tuition Class accepted Defendant's offer for live, in-person, on-campus education and paid valuable consideration in exchange.

97.     However, after accepting such consideration from Plaintiff and the other members of the Tuition Class, Defendant provided an entirely different product, which deprived Plaintiff

and the other members of Tuition Class of the benefit of the bargain for which they had already paid.

98.     Defendant retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

99.     Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted and the services and access which they actually received.

100.     As a direct and proximate result of Defendant's breach, Plaintiff and the other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus for which they contracted.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**(Plaintiff and Other Members of the Tuition Class)**

101.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

102.     Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

103.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

104.    Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus.

105.    Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

106.    Defendant has realized this benefit by accepting such payment.

107.    However, Plaintiff and the other members of the Tuition Class did not receive the full benefit of their bargain.

108.    Instead, Plaintiff and the other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, i.e. live, in-person, instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a completely different product carrying a different fair market value, i.e., online instruction devoid of the on-campus experience, access, and services.

109.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

110.    It is significantly cheaper for Defendant to provide the online product than the on-campus product.

111.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

112.     Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus. But even if it was not, it is not the product that students contracted for, and not the product that they bought.

113.     Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

114.     This cause of action does not seek to allege "academic malpractice."

115.     Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT

#### (Plaintiff and Other Members of the Fees Class)

116.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

117.     Plaintiff brings this count on behalf of himself and other members of the Fees Class.

118.     In addition to tuition, Defendant charges a mandatory University Fee.

119.     The University Fee applies broadly to all or certain groups of students, while other fees are program or course based.

120.     Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

121.     As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards these fees were intended by both the students and Defendant to cover the services for which the fees were described and billed.

122.   As such, in accepting these terms and paying these fees, a contract was formed between Plaintiff, including the Fees Class, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, benefits and/or programs related to those fees, as promised.

123.   It is undisputed that Defendant did not provide use of athletic facilities, the counseling center, health services, student organization activities, on-campus printing facilities, campus computer systems, and shuttles.

124.   Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

125.   However, Defendant breached the contract with Plaintiff and the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

126.   By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has not performed its contractual obligations.

127.   Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the benefits services and/or programs the fees were intended to cover.

128.   As a direct and proximate result of Defendant's breach, Plaintiff and the other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier

of fact in this action, to include disgorgement of the *pro-rata* amount of fees that were collected but for which services were not provided.

**FOR A FOURTH COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**(Plaintiff and Other Members of the Fees Class)**

129.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

130.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

131.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

132.    Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

133.    Plaintiff and other members of the Fees Class paid substantial student fees for on-campus benefits, access and services and did not receive the full benefit of the bargain.

134.    Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

135.    Defendant realized this benefit by accepting such payment.

136.    Defendant has retained this benefit, even though Defendant has failed to provide the services, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

137.    It is significantly cheaper for Defendant to provide the online product than the on-campus product.

138.     As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

139.     Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.

140.     Equity and good conscience require that Defendant return a *pro-rata* portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

141.     Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

### FOR A FIFTH COLLECTIVE CAUSE OF ACTION
### CONVERSION

### <u>(Plaintiff and Other Members of the Tuition Class)</u>

142.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

143.     Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

144.     The two key elements of conversion are (1) Plaintiff's legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) Defendant's unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiff's right.

145.    Plaintiff and members of the Tuition Class have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid tuition funds for the same.

146.    As set forth above, Defendant has not provided those services or access to the exclusion of Plaintiff's and other members of the Tuition Class's rights.

147.    As set forth above, Plaintiff and other members of the Tuition Class have not, to date, received from Defendant a proper reimbursement for tuition paid to Defendant for the 2020 Spring semester.

148.    Defendant has received and retained possession of Plaintiff's and other members of the Tuition Class's full payments for tuition for the 2020 Spring semester.

149.    Defendant's continued possession of the full payments for the 2020 Spring semester tuition is adverse and in derogation of Plaintiff's and the other members of the Tuition Class's entitlement to such funds.

150.    Defendant refuses to remit Plaintiff's and the other members of the Tuition Class's reimbursement for tuition paid for the 2020 Spring semester.

151.    Defendant has therefore converted and continues to convert Plaintiff's and the other members of the Tuition Class's 2020 Spring semester tuition.

### FOR A SIXTH COLLECTIVE CAUSE OF ACTION
### CONVERSION

### (Plaintiff and Other Members of the Fees Class)

152.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

153.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

154.    The two key elements of conversion are (1) Plaintiff's legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) Defendant's unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiff's right.

155.    Plaintiff, and other members of the Fees Class, have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid fees for the same.

156.    As set forth above, Defendant has not provided or made available those services, benefits, programs, and/or access thereto, to the exclusion of Plaintiff's and other members of the Fees Class's rights.

157.    As set forth above, Plaintiff and other members of the Fees Class have not, to date, received from Defendant a proper reimbursement for fees paid to Defendant for the 2020 Spring semester.

158.    Defendant has received and retained possession of Plaintiff's and other members of the Fees Class's payments for fees for the 2020 Spring semester.

159.    Defendant's continued possession of payments for 2020 Spring semester fees is adverse and in derogation of Plaintiff's and other members of the Fees Class's entitlement to such funds.

160.    Defendant refuses to remit to Plaintiffs and other members of the Fees Class a reimbursement for fees paid for the 2020 Spring semester.

161.    Defendant has therefore converted and continues to convert Plaintiff's and other members of the Fees Class's 2020 Spring semester fees.

**FOR A SEVENTH COLLECTIVE CAUSE OF ACTION**
**VIOLATIONS OF NY GENERAL BUSINESS LAW § 349, § 350, *ET SEQ.***

**(Plaintiff and Other Members of the Tuition Class)**

162.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

163.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

164.    New York General Business Law § 349 provides for consumer protection by declaring as unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."

165.    New York General Business Law § 350 provides that "False advertising in the conduct of any business trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

166.    Defendant, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive and fraudulent acts and practices in violation of New York General Business Law § 349, § 350, *et seq.* by engaging in the activities described herein.

167.    Defendant is a private university which, among other things, offered in-person, hands-on curriculum to Plaintiff and other members of the Tuition Class.

168.    Plaintiff and other members of the Tuition Class are consumers who have paid substantial tuition and fees to attend in-person, hands-on curriculum at Defendant's University for the Spring 2020 semester.

169.    Defendant's efforts to sell its services to prospective students, which included Plaintiffs and other members of the Tuition Class, were "consumer-oriented."

170.    As part of its marketing practices and recruitment efforts, as described above, Defendant made numerous statements, representations and omissions to the public (including Plaintiff and the other members of the Tuition Class) with respect to the in-person educational opportunity and on-campus experience that students who enrolled at the University would receive. Such statements, representations, and omissions, which were uniform and identical in nature, were intended to induce potential students to enroll at the University for the Spring 2020 semester.

171.    With the reasonable expectation that students who enrolled at the University would receive in-person academic instruction with an on-campus experience for the entire 2020 Spring semester, Plaintiff and other members of the Tuition Class paid tuition to Defendant.

172.    However, students did not receive an in-person academic instruction with on-campus experience, access and services for the entire Spring 2020 semester. As a result, Plaintiff and other members of the Tuition Class were proximately caused to pay inflated tuition because they were deprived of in-person academic instruction and an on-campus experience, access and services for the Spring 2020 semester.

173.    Therefore, the aforementioned statements, representations and omissions made by the University were objectively false, misleading and deceptive to Plaintiff and other members Tuition Class, as well as the public at large.

174.    Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Tuition Class because students enrolled for the Spring 2020 semester did not benefit from on-campus academic instruction and a unique on-campus experience during the entire spring term.

175.    In fact, Plaintiff and other students were not permitted to receive and benefit from on-campus academic instruction and a unique on-campus experience during the entire Spring 2020 semester.

176.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the University then they would be entitled to receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

177.    Plaintiff and other members of the Tuition Class were deceived and injured because students did not receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

178.    As a result of Defendant's foregoing violations of New York General Business Law § 349, § 350, *et seq.*, Defendant has directly and proximately caused damage to Plaintiff and other members of the Tuition Class. Accordingly, Plaintiff and other members of the Tuition Class are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

## FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION
## VIOLATIONS OF NY GENERAL BUSINESS LAW § 349, §350 *ET SEQ.*

### (Plaintiff and Other Members of the Fees Class)

179.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

180.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

181.    Defendant's actions constitute unlawful, unfair, deceptive, and fraudulent practices as defined by New York's Deceptive Acts and Practices Law, NY General Business Law § 349, § 350, *et seq.*

182.    Consumer-oriented conduct has been defined as conduct that potentially affects similarly situated consumers.

183.    Defendant is a private university which, among other things, offered in-person, hands-on curriculum to Plaintiff and other members of the Fees Class and its efforts to sell its services to prospective students, which included Plaintiff was "consumer-oriented."

184.    Plaintiff and other members of the Fees Class were required to pay a mandatory University Fee as a condition to student enrollment at the University for the Spring 2020 semester as well as various fees for specific courses, such as the Course Fee paid by Plaintiff.

185.    As discussed above, Defendant made statements, representations, and omissions to the public, including Plaintiff and other members of the Fees Class, with respect to such fees.

186.    These statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential students, including Plaintiff and members of the Fees Class, to enroll at the University and pay or cause to have paid the mandatory University Fee and additional course specific fees for the Spring 2020 semester.

187.    With the reasonable expectation that students who enrolled at the University would be entitled to receive services, programs and/or benefits for which fees were charged for the entire Spring 2020 semester, Plaintiff and other members of the Fees Class agreed to pay such fees.

188.    However, students did not receive the services, programs and/or benefits for which such fees were charged for the entire Spring 2020 semester. As a result, Plaintiff and other members of the Fees Class were proximately caused to overpay such fees because the related services, programs and/or benefits were not available to students for the entire Spring 2020 semester.

189.    Therefore, the aforementioned statements, representations and omissions made by the University were objectively false, misleading and deceptive to Plaintiff and other Fees Class Members, as well as the public at large.

190.    Defendant's above alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Fees Class because students enrolled at the University did not receive services, programs and/or benefits for which fees were paid for the entire Spring 2020 semester.

191.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the University and paid the mandatory University Fee as well as course specific fees then they would be entitled to receive the services, programs and/or benefits for which such fees were charged and paid for the entire Spring 2020 semester.

192.    Plaintiff and other members of the Fees Class were deceived and injured because students were not entitled to receive the services, programs and/or benefits for which the fees were charged and paid for the entire Spring 2020 semester.

193.    As a result of Defendant's foregoing violations of New York General Business Law § 349, §350, *et. seq.*, Defendant has directly and proximately caused damage to Plaintiff and members of the Fees Class and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs, and disbursements.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, individually and on behalf of members of the Classes, prays for judgment in their favor and against Defendant as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.      Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.      Declaring that Defendant has wrongfully kept monies paid for in tuition and fees;

D.      Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for in tuition and fees;

F.      Scheduling a trial by jury in this action;

G.      Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

H.      Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I.      Awarding such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: August 28, 2020

**MOREA SCHWARTZ BRADHAM**
**FRIEDMAN & BROWN LLP**

By: */s/ Peter B. Katzman*
Peter B. Katzman
John M. Bradham
444 Madison Avenue, 4th Floor
New York, NY 10022
Tel: (212) 695-8050
Email:  pkatzman@msbllp.com
            jbradham@msbllp.com

**ANASTOPOULO LAW FIRM, LLC**

By: /s/ *Eric M. Poulin*
        Eric M. Poulin, Esq. *
        Roy T. Willey, IV, Esq. *
        32 Ann Street
        Charleston, SC 29403
        Tel: (843) 614-8888
        Email: eric@akimlawfirm.com
               roy@akimlawfirm.com

**TOPTANI LAW PLLC**
Edward Toptani
375 Pearl Street, Suite 14106
New York, NY 10038
Tel: (212) 699-8930
Email: edward@toptanilaw.com

**ATTORNEYS FOR PLAINTIFF**

* *Pro hac vice motion forthcoming*